JOSEPH McCRUM, *et al.*, v. AMANDA CORBY, *Executrix, &c.*

1. FORECLOSURE, BY EQUITABLE ASSIGNEE; *Rights of all Parties, before the Court must be Determined.* When the payee of a negotiable promissory note secured by mortgage assigns the note and mortgage as collateral security to secure the payment of a debt due from said payee to said assignee, and when the assignee afterward sues on said note and mortgage, making the maker thereof, the payee, and all other persons interested therein or in the mortgaged premises, parties to the suit, *held*, that the said assignee can recover in said suit only the amount of the debt

due from the payee to himself, and that any surplus due on the note, after paying said debt to said assignee, must be paid to the person who is in equity entitled to the same.

2. ASSIGNMENT OF NEGOTIABLE NOTE *payable to "Order;" Title of Assignee.* When a negotiable promissory note payable to "order," and a mortgage given to secure the same, are transferred, whether before·or after maturity, by delivery merely, and not by *indorsement, held,* that the assignee obtains merely an equitable interest in the note and mortgage, not the legal title thereto; and when the assignee sues on said note. and mortgage, the assignee must be prepared to meet all equitable defenses or claims which may be set up against said note and mortgage.

### *Error from Doniphan District Court.*

THE principal facts in this case are set forth in the opinion of the court, *infra.* The notes sued on, and mentioned in the opinion, are three in number, amounting in the aggregate to $1,680. Except as to amount, and time of maturity, they are alike. The first note is as follows:

"$590.00. NOVEMBER 10th, 1865.

ON or before the 10th of November 1868 I promise to pay to H. W. Boone, or order, the sum of five hundred and ninety dollars, negotiable, and payable without defalcation or discount, with interest at the rate of six per cent. per annum from maturity, for value received, subject to a discount of six per cent. per annum if paid before due for the unexpired time. W. J. VANCUREN."

On the 24th of November 1865 said Vancuren and his wife executed to said Boone a mortgage on certain lands lying in Doniphan county, Kansas, to secure the payment of said three notes. The next day, (November 25th,) Boone transferred said notes and mortgage to John Corby. *Amanda Corby* was nominated in the last will and testament of said. John Corby as his executrix, and said nomination was confirmed by the probate court of Buchanan county, Missouri. In December 1871 said *Amanda,* executrix, etc., brought her suit on said notes, and to foreclose said mortgage. In the answer of *W. J. Vancuren* and wife they allege that said *W. J. V.* confessed a judgment on said notes in favor of said H. W. Boone, in the district court of Doniphan county at the April Term 1869 for $1,630.43, and costs; that they had no

notice that *Boone* had transferred the notes to Corby, and that at the time said judgment was so confessed said notes were not "indorsed" to said Corby; that afterward said judgment was assigned by said *Boone* to defendant *Joseph McCrum*, to whom said *W. J. V.* had, in 1869 and 1870, paid $1,001.55 to apply on said judgment, and they claimed that said judgment was a bar to the action brought by Corby's executrix. *McCrum* in his answer claimed to own the judgment confessed on the notes by *Vancuren*, and to be entitled to the mortgage given to secure said notes. *Boone* answered, setting up a general denial. Shortly before said suit was commenced by said executrix, *McCrum*, as assignee of said judgment, sued out a writ of execution thereon, upon which the sheriff of Doniphan county levied on said mortgaged premises, whereupon *Vancuren* and wife brought suit against *McCrum*, and *Campbell* as sheriff, to enjoin proceedings upon said execution until the rights of the parties interested could be determined. These two actions were consolidated, and were tried together at the December Term 1872 of the district court. Judgment was given in favor of Corby's executrix and against *W. J. Vancuren* for $1,995.23, and costs, and a decree of foreclosure and sale of the mortgaged premises entered against all the defendants. From this judgment and decree *McCrum, Boone* and *Vancuren* and wife, appeal, and bring the case here on error for review. No briefs on file.

*Albert Perry*, for plaintiff in error.

*Nathan Price*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: It appears from the record in this case that two actions were commenced in the court below — one entitled as follows: "Amanda Corby, executrix of the last will and testament of John Corby deceased, plaintiff, v. W. J. Vancuren, Henrietta Vancuren, H. W. Boone, and Joseph

McCrum, defendants;" the other entitled as follows: "Willis J. Vancuren and Henrietta Vancuren, plaintiffs, v. Joseph McCrum, and Bayless Campbell, sheriff of Doniphan county, defendants." These two actions were consolidated by order of the court. W. B. Wood was appointed a referee to hear and determine evidence, and to report the amount of money paid by W. J. Vancuren to Joseph McCrum. This was the only question submitted to said referee. The referee performed his duties, and reported that the amount so paid was $273.47. Other issues were tried by a jury, and the jury found thereon as follows:

"1. Q.–Did the defendant H. W. Boone transfer the notes now sued on in this action to John Corby, plaintiff's testator, in his lifetime as collateral security for debts due from said Boone to said Corby? Answer.–Yes.

"2. Q.–Are the notes still held by said plaintiff under the contract by which said John Corby received them from defendant Boone as collateral security for indebtedness from said Boone to said Corby? Answer.–Yes.

"3. Q.–If the plaintiff is entitled to recover, what shall be the amount of his money? Answvr.–$1,995.23.

"4. Q.–Were the notes sued upon in this action deposited with the said John Corby for safe-keeping by the said Boone? Answer.–No."

These are all the findings in the case, or rather in the two cases. There is no general finding by either the court, or the referee, or the jury. And these special findings do not cover all nor any great proportion of the issues in the two cases. Can any one tell from said findings, with the aid of all the admissions in the pleadings, whether said notes were *indorsed* by Boone, or merely transferred by *delivery* to Corby? Were they transferred *before due*, or afterward? Did Vancuren have any *notice* that they were transferred to Corby as collateral security when Vancuren confessed judgment on them to Boone? By what authority was the said judgment rendered against *Henrietta Vancuren?* (*Moore v. Wade*, 8 Kas., 380.) Was the real estate which was mortgaged to secure the payment of these notes the *homestead* of Vancuren and family? (*Morris v. Ward*, 5 Kas., 239.) Had Vancuren any

Statement of case and proceedings.

*notice* that Corby held said notes as collateral security when he paid said $273.47 to McCrum? Had McCrum any *notice* that Corby held said notes as collateral security *when he* (McCrum) *purchased* said judgment from Boone, or *when* he *received* said money on the judgment from Vancuren? Did Boone owe Corby's estate at the time of the trial in this case *more or less* than the amount of the said notes? Were the debts that these notes were intended to collaterally secure *usurious*, or not? *Where* were these debts contracted? If in Missouri, what are the *laws* of Missouri concerning usury? These questions cannot all be material, but any one of them may be material if the fact should be found in a particular way. This case, or rather the two cases, were very carelessly tried in every respect in the court below, if the record brought to this court is correct. As an instance of the careless manner in which the parties submitted interrogatories to the jury to obtain special findings of fact thereon, we would refer to the interrogatory upon which the third finding of the jury is based, to-wit: "If the *plaintiff* is entitled to recover what shall be the amount of *his* recovery?" There were *three* plaintiffs in the two cases, not merely one. In the first case mentioned the plaintiff was a *woman*, and "his" would not be applicable. In the other case one of the plaintiffs was a man, and the other a woman. It will be obvious to any one who will examine the record now before us that we cannot at the present time determine all the rights of all the parties in this court. We shall therefore not attempt to do so, but shall decide one or two questions, and send the case back to the court below for a new trial.

The judgment of the court below was in favor of Amanda Corby, executrix of John Corby's estate, and against Willis J. Vancuren for the full amount of the said notes with interest, and against all the parties who are now plaintiffs in error, to-wit: Willis J. Vancuren, Henrietta Vancuren, H. W. Boone, and Joseph McCrum, for the sale of the mortgaged premises. The plaintiffs in error raised the question in the court below, and now

1. Foreclosure by equitable assignee. Equities to be settled.

raise it here, that Corby's estate could at most recover only
for the amount of the indebtedness from Boone to said estate.
The court below seemed however to be of a different opinion.
The plaintiffs in error asked the court to instruct the jury to
make special findings upon the following questions of fact,
to-wit: "Were the notes sued upon in this action deposited
with John Corby by defendant Boone as a collateral security
to said Corby for an *indebtedness* to him by Boone? If yea,
how *much* is now *due on such indebtedness?*" The court re-
fused to so instruct the jury. (Laws of 1870, page 173, § 7.)
"And the court instructed the jury that they *must find for
the plaintiff* upon the third question of fact *the full amount of
the notes* sued upon with interest." We think the court erred.
This ruling of the court would perhaps have been correct in
an action brought by said executrix against Vancuren and
wife alone. In such an action the executrix could have col-
lected the full amount of the notes and then let Boone and
his assignees look to her for any surplus remaining after pay-
ing her claim against Boone. But in this action Boone, and
his assignee, McCrum, were also parties; and they were en-
titled to said surplus. The rights of all the parties should
have been determined in this proceeding. The said executrix
should have received just enough to satisfy her claim against
Boone, and costs, and no more, and the surplus should have
gone where in equity it properly belonged. The court there-
fore erred in refusing to allow the jury to find whether there
was any surplus or not, and in requiring that the jury "must
find for the plaintiff," (said executrix) "the full amount of
the notes sued upon, with interest." Of course, if the notes
were not sufficient to pay the amount of the indebtedness
from Boone to Corby's estate, then it would be right for the
court to render a judgment in favor of the estate for the full
amount of the notes. But this is a question of fact to be
determined by the jury, and not a question of law to be de-
termined by the court. It is true, the amount due on the
notes, aside from any payments on them, is a question of
law; but the amount due from Boone to Corby's estate, and

secured by these notes, is a question of fact, and can be determined by the jury only, as the facts were submitted to the jury and not to the court. These notes with the mortgages given to secure them were probably transferred by Boone to Corby merely by delivery, and not by any indorsement thereon. If so, then Corby obtained only an equitable interest therein, and must be prepared, whether they were transferred before or after maturity, to meet all equities that may be set up against them. (Story on Promissory Notes, § 120; Story on Bills, § 201; 2 Parsons on Notes, 52, 53.) At common law no chose in action was negotiable, or even assignable. In equity every chose in action except a tort was assignable, but it was assignable subject to all equities that might be set up against it. Under our statutes every chose in action is assignable except a tort, the same as it was in equity; (civil code, § 26;) and under our statutes (the same as in equity) it is subject, after assignment, to all equities that may be set up against it, unless it be a negotiable bond, or a negotiable bill of exchange, or a negotiable promissory note. And if it be a negotiable bond, bill, or promissory note it can be assigned free from all equities only by being assigned in accordance with the provisions of the statute. Hence, even a negotiable promissory note, if payable to "order," can be assigned free from all equities only by *indorsement*, (Gen. Stat. 114, ch. 14, § 1, *et seq.,*) for there is no statute in this state that authorizes a negotiable promissory note payable to "order" to be transferred free from all or any equitable defenses or claims except by indorsement. Of course, the right of the assignee of a negotiable promissory note, or indeed of any note transferred by delivery merely, cannot be defeated, except by a paramount equitable right. The court below evidently entertained the opinion that the executrix must recover the full amount of the note sued on, without regard to any equitable defenses that might be set up against the notes or mortgages. In this we think the court erred. Boone continued to hold the legal title to said notes and mortgage, Corby obtained only the equitable

2. Assignment of of notes payable to "order."

title thereto, and hence the action of Corby's executrix on said notes and mortgage might well be met by equitable defenses.

The judgment of the court below must be reversed, and cause remanded for a new trial.

All the Justices concurring.