This proceeding in error was commenced to review the decision of the district court of Noble county admitting to probate the will of one Martin Klufa, who died testate in said county on August 30, 1910. The will bequeathed all of the decedent's property, both real and personal, to his wife, Mrs. Kata Klufa, and bequeathed one dollar to each of his eleven children. The will was filed for probate in the county court of Noble county on April 27, 1914, and on May 12th was duly admitted to probate by said court. Thereafter two of the decedent's daughters filed their petition in said county court praying that the probate of said will be revoked and that it be held invalid, alleging, first, that there was a will of a later date; second, that said will was procured by undue influence, duress, and fraud; and, third, that the purported will was not properly executed and attested as required by law. At the hearing of the contest the county court found that the will was not duly executed and attested as required by law, and adjudged that it was invalid and of no effect. The case was appealed to the district court, where a trial de novo was held, with the result hereinbefore stated.
We will dispose of the assignments of error in the order they are presented in plaintiffs in error's brief, the first of which is, in effect, that the trial court erred in holding that said will was duly executed and attested Under this assignment it is asserted that, since the record shows that Martin Klufa was a Bohemian and could not speak or understand the English language, it was essential to the validity of the will that at least two of the attesting witnesses to the will should speak and understand the Bohemian language.
The evidence discloses that the will was subscribed and purported to be attested by three witnesses, to wit, Dr. H.B. McCorkel, Mrs. Anna Smith, and Lizzie Kafka (now Lizzie Morava); that Dr. McCorkel could *Page 14 
speak and understand the English language, but could not speak or understand the Bohemian language; that Mrs. Anna Smith, who acted as interpreter, could speak and understand both languages, and that Lizzie Kafka could speak and understand the English language and could understand the Bohemian language, although she could not speak it.
In the case of Hill v. Davis, 64 Oklahoma, 167 P. 465, which is relied upon by both sides in this case, we said:
"The testator must, at the time of subscribing and acknowledging the same [the will], declare to the attesting witnesses that the instrument is his will; and there must be two attesting witnesses, each of whom must sign his name at the end of the will at the testator's request and in his presence."
In that case it was noted the statute requires that there be two attesting witnesses and that such attesting witnesses subscribe their names to the will. It was further held that there is a distinction between attestation and subscription, which serve distinct and different purposes, both of which the statute requires, and that "attestation is the act of the senses; subscription is the act of the hand." In that case the testatrix was a full-blood Indian, who could speak and understand only the Creek language; and the will was subscribed by Maxey Sims, Leroy Burt, and J.H.N. Cobb. Sims could speak and understand both the Creek Indian language and the English language, but Burt and Cobb could speak and understand only the English language. Sims acted as interpreter, the testatrix stating that the instrument was her will and requesting Sims, Cobb, and; Burt to attest the same, speaking in the Creek language. Sims understood this, and through interpretation into the English language conveyed the request to Burt and Cobb. In the opinion we emphasized the fact that the only knowledge the two witnesses of the white race, Cobb and Burt, had that the testatrix declared the instrument subscribed to be her will and that she desired them to attest it was what the interpreter said, and that this was insufficient. That case differs from the instant case in this: Although Anna Smith was the only attesting witness who could both speak and understand the Bohemian language and could also speak and understand the English language, Lizzie Kafka, one of the attesting witnesses, could speak and understand the English language and could also understand the Bohemian language, although she was unable to speak it. When Anna Smith interpreted the will, which was written in English, into the Bohemian language, she, the testator, and Lizzie Kafka all understood it; and when the testator declared the same to be his will and requested the witnesses to subscribe their names and attest it, Anna Smith and Lizzie Kafka, through their senses, understood the declaration and the request and subscribed their names pursuant thereto. They thus became qualified subscribing and attesting witnesses.
There is some contention in the plaintiffs in error's brief that the interpreter, Anna Smith, did not have the requisite knowledge of the Bohemian language to qualify her to act as interpreter of the will, but after a careful examination of the record we are satisfied that this contention is wholly without merit.
On the question of undue influence, fraud, and duress, it is sufficient to say that we have examined the record and find both from the testimony of the subscribing witnesses and of other witnesses present, including some of the children of the deceased, that the judgment of the trial court is not clearly against the weight of the evidence on this issue.
The third propostion presented in the brief is that the court erred in admitting in evidence over plaintiffs in error's objection the deposition of one George V. Smith, a resident of California, on the ground that notice for the taking of the deposition did not give plaintiffs in error sufficient time, by the usual route of travel, to attend, and one day for preparation, exclusive of Sunday and the day of service, as provided by section 5079, Rev. Laws 1910. Notice was served on the 17th day of March, 1917, that the deposition of the witness Smith would be taken at Redding, Shasta county, Cal., on the 23rd day of March thereafter. The 17th was Saturday, and excluding the day on which the notice was served and the day following, which was Sunday, there still remained five days. There is not any evidence in the record showing how long it takes to go, by the usual route of travel, to Redding, Cal. All that there is in the record throwing any light on this question is that the deposition, after it was taken, was post-marked at Redding, Cal., March 24, 1917, 6 p. m., and bears the filing mark in the district court of Noble county, March 28, which apparently refutes the idea that sufficient time was not allowed.
The remaining assignment of error is that the trial court erred in refusing to grant a new trial on the ground of newly discovered evidence on the issue as to whether the will probated was the last will of Martin Klufa; it being contended that there was a *Page 15 
later will which was destroyed by his wife, this being one of the issues in the case. We do not think there is any merit in this contention for the reason that it was not shown that plaintiffs in error had exercised proper diligence to procure this evidence at the trial. Straughan v. Cooper, 41 Okla. 515,139 P. 265. Motions of this character are addressed to the sound discretion of the trial court, and where the record does not show an abuse of discretion in this respect, the court's action thereon will not be disturbed by this court. Jones v. Oklahoma Plaining Mill Mfg. Co., 47 Okla. 477, 147 P. 999.
The judgment of the district court is, therefore, affirmed.
OWEN, C. J., and KANE, PITCHFORD, JOHNSON, McNEILL, HIGGINS, and BAILEY, JJ., concur.